**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| DAWN GEORGOPOULOS, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00192-ALM- |
| | § | CAN |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

**RELEVANT PROCEDURAL HISTORY**

On June 10, 2019, Plaintiff filed her application for disability income benefits ("DIB") under Title II of the Social Security Act, alleging an onset of disability date of February 1, 2018 [TR 11]. Plaintiff amended her alleged onset date to January 1, 2019, at Hearing [TR 11, 27]. Plaintiff was born on July 13, 1966, making her fifty-one (51) years of age on the alleged onset date [TR 19]. Plaintiff's age classification at alleged onset date was that of a "person closely approaching advanced age." *See* 20 C.F.R. §§ 404.1653(d). Plaintiff has at least a high school education [TR 147]. Plaintiff's last full-time employment was as a Medical Assistant [TR 19, 148]. Plaintiff worked in this position for fifteen (15) years [TR 148].

On August 26, 2019, Plaintiff's application was initially denied [TR 11], and again on reconsideration on January 31, 2020 [TR 11]. On February 18, 2020, Plaintiff filed a written

request for an administrative hearing ("Hearing") [TR 11]. Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on November 12, 2020, via telephone [TR 11]. Plaintiff was represented by counsel at Hearing [TR 11]. Plaintiff's application was denied by the ALJ following Hearing on December 21, 2020 [TR 8].

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation [TR 13-20].[1] The ALJ found Plaintiff meets the insured status requirements of the Act through March 31, 2022, and that Plaintiff had not engaged in substantial gainful activity since January 1, 2019, the onset date [TR 13]. Plaintiff filed a claim for disability benefits alleging LT L5/SA herniated disk, back surgery, hip surgery, nerve damage, degenerative disk disease, disk bulging, lumbar radiculopathy, neuroforaminal stenosis, and high blood pressure [TR 48]. The ALJ found Plaintiff had the following severe impairments: "lumbar spine degenerative disc disease status post laminectomy, fragmentectomy and foraminotomy; and left hip gluteus medius tendon repair, acetabular labrum repair, left hip arthrotomy" [TR 13]. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925 and 416.926) [TR 15]. At step four, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")

---

[1] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she is capable of performing her past work. § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

based on the requirements of 20 C.F.R. § 404.1529, SSR 16-3p and in accordance with the requirements of 20 C.F.R. § 404.1520(c):

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift, carry, push and pull up to ten pounds occasionally, less than ten pounds frequently. She can stand and walk two hours in an eight hour day and sit six hours in an eight hour day. The claimant can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and can occasionally balance, stoop, kneel, crouch & crawl.

[TR 15]. Continuing the step four analysis, the ALJ found that Plaintiff is unable to perform any past relevant work (20 C.F.R. § 404.1565) [TR 18]. At step five, the ALJ found that based on Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found there were jobs, existing in significant numbers in the national economy that Plaintiff could perform (20 C.F.R. § 404.1569 and 404.1569(a)) [TR 19]. Thus, the ALJ held that Plaintiff has not been under a disability as defined in the Social Security Act, from January 1, 2019, through December 21, 2020 (20 C.F.R. § 404.1520(g)) [TR 20].

On December 28, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 126]. The Appeals Council denied review on February 18, 2021 [TR 1-5]. On March 12, 2021, Plaintiff filed the instant suit [Dkt. 1]. On August 26, 2021, the Administrative Record was received from the Social Security Administration [Dkt. 13]. Plaintiff filed her Brief on August 27, 2021 [Dkt. 15]. The Commissioner filed its Brief on October 27, 2021 [Dkt. 16]. On November 4, 2021, Plaintiff filed her Reply [Dkt. 17].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021)

(quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff asserts four claims of error on appeal, stated as follows: Did the ALJ err by (1) "omitting several limitations supported by [Dr. John East's October 2020 assessment] when posing hypothetical questions to the [VE] at Hearing," specifically that she cannot reach or carry weight; (2) failing to "give adequate weight to objective medical evidence from a functional capacity evaluation [completed by Mitch Winn, OTR] that Plaintiff underwent at the recommendation of her treating doctor"; (3) "discredit[ing] the opinion of Plaintiff's treating doctor [Dr. East]"; and (4) "leav[ing] medical evidence supporting Plaintiff uncontradicted where

she did not cite any credible evidence to refute Plaintiff's spinal issues" [Dkt. 15 at 5]. While stated as four points, each of these issues hinges on whether the ALJ properly assessed the medical opinions of record.

***Relevant Medical Records and Opinions***

Accordingly, the Court begins its analysis by summarizing Plaintiff's treatment history at Addison Pain Management ("APM") for the relevant time, including specifically the "joint" October 2020 medical source statement of Dr. John East ("Dr. East") and Mitch Winn, OTR ("Winn"), and the opinions of the State Agency Medical Consultants ("SAMCs") [TR 344-366, 412-416, 417-453, 454-68, 47-55, 57-69].[2]

Plaintiff began treatment at APM in 2014 [TR 209]. During the relevant time, she was largely seen by Sylvia Flores Bugarin, FNP ("Bugarin"); while Dr. East was reported as being physically present in the office, he did not participate in Bugarin's examinations [TR 209-290]. On July 1, 2019, Plaintiff presented to APM for medication management complaining of low back pain and reporting difficulty sitting or standing longer than a few minutes [TR 347]. On this date, Plaintiff further reported she was self-reliant in usual daily activities, had no difficulty dressing or with mobility, and was able to walk [TR 347-348]. Upon physical examination, it was reported Plaintiff appeared active, did not appear uncomfortable, had normal movement of all extremities, mobility unlimited, no limping, no antalgic gait, no ambulation device, and no weakness in her upper extremities [TR 348]. A treatment plan was developed for Plaintiff's lower back pain, the attending nurse practitioner found the pain was most likely emanating from the sacroiliac joint and that Plaintiff would benefit from steroid injections and rehab services [TR 349-350]. Plaintiff was seen again on August 6, 2019, for a steroid injection; she continued to report low back pain, and

---

[2] This is not an exhaustive review of Plaintiff's medical records, but rather, a summary of those most pertinent to the issues on appeal.

difficulty sitting, standing, and bending [TR 352]. Plaintiff's self-reported functional status and physical examination results remained unchanged [TR 352-353]. An MRI dated August 7, 2019, reflects "unremarkable upper lumbar epinal canal conus medullaris," "no evidence of bony foraminal narrowing or stenosis," "no abnormal marrow infiltration identified," and "no abnormal paraspinal soft tissue identified" [TR 453]. Plaintiff received a second steroid injection on August 20, 2019 [TR 365-366]. On September 4, 2019, Plaintiff presented for a follow-up after the injections [TR 357]. Plaintiff continued to complain of lower back pain, was maintained on her pain medications, and a follow-up visit was scheduled [TR 361]. On October 14, 2019, Plaintiff was seen again for her low back pain [TR 361]. Upon physical examination, Plaintiff was still found to have normal movement of all extremities, unlimited mobility, no limping, no antalgic gait, no ambulation device, and no weakness in her upper extremities [TR 362]. She continued pain medication and was encouraged to "continue with a regular exercise regimen including stretching, range of motion and strengthening exercises," and directed to schedule a follow-up [TR 363-364]. Plaintiff was seen again November 14, 2019 [TR 417]. Her physical examination reflected improvement with normal movement in all extremities, unlimited mobility, no limping or antalgic gait, and no ambulation device [TR 418]. Plaintiff's medication was continued, and she was again encouraged to exercise and stretch [TR 419]. On January 15, 2020, Plaintiff was seen; given her continued pain after conservative measures of treatment, it was recommended that a peripheral stimulation device be implanted in Plaintiff to help with pain control and reduce medication consumption [TR 423]. Plaintiff's next visits on February 26, 2020, April 14, 2020, and May 29, 2020, largely reflected no change in her condition [TR 425-437]. On July 9, 2020, Plaintiff reported increased pain and difficulty with her mobility, and it was again recommended that an MRI be obtained [TR 438-442]. The next reported visit to APM was on August 21, 2020

[TR 412].  At the time of visit, Plaintiff reported severe back pain making it painful and difficult to stand, walk, or sit for more than 15 minutes [TR 412].  At this time, Plaintiff reported difficulties with mobility and an inability to walk and an intent to have a spinal cord stimulator placed after COVID [TR 413, 416].  Upon physical examination, Plaintiff was found to have normal movement in all extremities, but to have limited mobility and be limping [TR 414].  Plaintiff received an intramuscular injection to assist with her pain and the nurse practitioner recommended an MRI be performed to evaluate next steps [TR 414, 443-446].  On October 6, 2020, Plaintiff was again seen at APM [TR 448].  She reported her current medication helpful in alleviating her pain but that to continues to have pain with prolonged walking, sitting, or standing [TR 448].  Her physical examination results are reported as normal movement of all extremities, limited mobility, limping, no antalgic gait, and no weakness in the upper extremities [TR 450].

On October 12, at the request of APM, Mitch Winn, OTR (Occupational Therapist Registered) completed a functional capacity evaluation and medical source statement regarding Plaintiff [TR 454-457, 458-464].  Dr. East did not participate in the functional capacity evaluation. Winn's functional capacity evaluation made the following findings:

> Ms. Georgopoulos did not meet the physical requirements of a sedentary position per D.O.T. guidelines (see page 11 for supporting documentation) during this evaluation. She was unable to tolerate dynamic lifting and positional tolerances due to c/o's severe LB discomfort. Effort and consistency were rated as good as indicated by the examinee's HR remaining consistent with a + pain response, as well as all COV's measuring <15%. Lumbar AROM: flexion - 33 extension – 12 L lateral flexion – 10 R , 12 L SLR – 55 R 58 . Deficits were in noted in: lumbar AROM, dynamic lifting/carrying tolerance, sitting/standing positional tolerances, and c/o's severe LB discomfort with dynamic activity.

[TR 458].  Winn also made the following comments: Regarding Plaintiff's ability to lift a 30x30 centimeter crate weighing ten pounds from floor to shoulder level Winn observed that "Examinee did not complete the 10 lb attempt due to complaints of severe LB discomfort. HR was consistent

with a + pain response" [TR 461].  Regarding Plaintiff's ability to carry a 30x30 centimeter crate weighing five pounds over a pre-determined distance, with progressively increased loads, Winn observed that "Examinee did not complete the 10 lb attempt due complaints of severe LB discomfort. HR was consistent with a + pain response" [TR 462].  Winn further opined that Plaintiff complained of severe discomfort in the push/pull test, Plaintiff complained of LB discomfort in the leg lift and arm/high near lift tests [TR 463-64].  Lastly, Winn found Plaintiff could not complete the sustained standing with distance reach evaluation or the sustained sitting position reach evaluation because of complaints of severe LB discomfort and HR consistent with a positive pain response [TR 466].

A corresponding medical source statement, dated October 12, 2020, signed only by Winn, but titled as being "jointly" from both Dr. East and Winn finds:  Plaintiff cannot walk even one city block without rest or severe pain; Plaintiff can only sit for five minutes before needing to get up; Plaintiff can only stand for five minutes before needing to sit down or walk around; Plaintiff can sit and stand/walk less than two hours in an eight-hour work day; Plaintiff needs a job that permits shifting positions at will from sitting, standing, or walking; Plaintiff needs to walk around every five minutes for at least fifteen minutes during an eight-hour work day; Plaintiff will need to take unscheduled breaks during a work day at least every half hour for at least thirty minutes, Plaintiff will need to elevate her legs to waist height while sitting for at least 80% of the eight-hour work day; Plaintiff needs to use a cane or other hand-held assistive device while walking; Plaintiff can only lift less than ten pounds rarely and can never carry more than that; Plaintiff cannot twist, climb stairs, or climb ladders; Plaintiff can rarely stoop (bend) or crouch/squat; Plaintiff has significant limitations with reaching, handling, or fingering; specifically that with both her left and right hand she would be limited to 25% of the time in an 8-hour work day to grasp, turn and twist

objects, fine manipulation, reaching in front of the body, and reaching overhead.  Plaintiff would likely be off-task 25% or more during a workday; Plaintiff would likely miss work more than four days per month due to treatments or impairments [TR 455-457].  Worthy of mention, the medical source statement is stated by the ALJ to have been "jointly" completed by Dr. East and Winn. Upon review, the statement is signed only by Winn [TR 457], Dr. East's name is written on the front page [TR 454], and it is wholly unclear which, if any, portions were actually completed by Dr. East.  Based upon a review of the handwriting on the document, it appears all disputed limitations related to Plaintiff's ability to reach and carry on the form were completed by Winn.

On August 21, 2019, State Agency Medical Consultant Dr. Amita Hegde ("Dr. Hegde") completed an initial assessment of Plaintiff [TR 47-55].  Dr. Hegde was provided and reviewed the records, to date, from APM [TR 51].  She opined Plaintiff was occasionally limited to lifting and carrying 10 pounds and frequently limited to lifting and carrying less than 10 pounds, that Plaintiff could stand and walk for a total of 2 hours and could sit for about 6 hours in an 8-hour workday [TR 52].  Dr. Hegde explained the limitations were due to Plaintiff's long history of chronic hip and joint pain and that she should be limited to standing or walking a combined 2 hours out of an 8-hour workday [TR 52].  No manipulative limitations were found [TR 53].  On reconsideration, on January 30, 2020, Dr. Leah Holly agreed with Dr. Hedge's stated limitations [TR 68].  Both SAMCs agreed Plaintiff was capable of limited sedentary work.

### *ALJ's Determination*

The ALJ's Decision recounts Plaintiff's relevant medical history at length, and specifically examines the October 2020 statement:

> During the relevant period, providers noted pain and tenderness, visible edema, reduced left lower extremity strength, and the claimant was able to bear weight with very limited range of motion with excruciating pain (1F/36/54, 5F/4). Therefore, this evidence of sustained medical treatment, positive signs of tenderness and

restricted motion, a history of lumbar and hip surgeries, and multiple forms of pain management attempted, provides support for the claimant's allegations in this case. However, after careful consideration of the evidence, the undersigned finds that while the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

To begin, although the claimant alleges debilitating pain that prevents her from sitting or standing more than fifteen minutes at a time, the record routinely described her as being in no acute distress (1F/35/53/65, 4F/15, 5F/4, 7F/10). She was usually described as not appearing uncomfortable (1F/35/53/65, 4F/15, 7F/10). The claimant's gait was often normal, and neither her treatment records nor her function report described any longitudinal use of assistive walking devices (4E, 1F/35/53, 4F/15, 7F/11). Hip examinations showed no weakness or sensory deficit, palpable pulses, and no reported numbness (1F/35/53/65, 4F/15, 7F/11). While the claimant alleged trouble lifting over two pounds and holding onto items, her physical examinations frequently found normal movement of all extremities, mobility unlimited, and normal muscle bulk, tone and strength (1F/35/36/53/66, 4F/15, 7F/11). This evidence of intact strength and mobility shows that the claimant's alleged functional restrictions do not find persuasive support in her examination findings.

After the claimant's lumbar surgery, she indicated she was no longer experiencing pain in her left leg (1F/60). She completed her rehabilitation program and was discharged due to meeting goals for improved function and in subjective pain levels (5F/29/30). She reported significant relief following injections (1F/69). Notably, lumbar imaging from June 2019 did not show any infection, spondylolisthesis, and mild degenerative disc disease at L5-S1 showed no modic type changes (5F/12). August 2019 imaging showed enhancing postoperative granulation tissue in L5-S1 with mild bilateral facet hypertrophy, and slight to mild multilevel degenerative spondylosis throughout the lumbar spine (7F/36). Together, the findings of these studies, which have been described as mild and slight, are not fully consistent with the claimant's allegations of extensive functional restrictions that kept her lying down most of the day and limited her to no more than a few minutes of exertion. In September 2019, the claimant rated her pain levels at a three out of ten (4F/14). In late 2020, the claimant indicated that her current medication is very helpful in alleviating her pain so that she can function (7F/32). This evidence therefore supports some physical accommodations, but not to the level alleged by the claimant.

The undersigned also notes that the claimant is able to go out to eat and get her nails done, activities which typically require more than fifteen minutes of sitting (4E). A longitudinal review of the medical evidence shows that the claimant usually reported being self-reliant in usual daily activities; instrumental activities of daily

living were normal; she had no difficulty dressing; going to the bathroom with no difficulty; no difficulty with mobility; no difficulty washing oneself; no difficulty grooming; and was able to walk (1F, 4F, 7F).

Pursuant to SSR 16-3p, the undersigned has considered these inconsistencies between the claimant's allegations and the longitudinal evidence of record in evaluating the claimant's residual functional capacity.

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

State agency consultants opined that the claimant was limited to a sedentary exertional level with reduced postural duties (1A, 3A). These opinions are persuasive, as they are supported by reviews of the evidence available to the consultants at the time of the opinions, and they are consistent with the medical evidence of record showing post-operative granulation, but only slight or mild diagnostic findings and normal gait without assistive device in most physical examinations.

Additionally, there is an assessment of the claimant's functional ability, which appears to be mostly completed by Mitch Winn, OTR, who signed it on October 12, 2020 (8F). John East, DO, appears to have filled in page one of that exhibit and some check boxes on page 2. While the majority of the exhibit is not a medical opinion, and therefore not particularly valuable, it appears that Dr. East adopted the occupational therapist's findings, and the opinion will be evaluated in accordance with 20 CFR 1520c. The joint opinion indicated that the claimant can sit and stand up to 5 minutes at a time, can sit less than two hours total, can stand/walk less than two hours total, needs to walk around for five minutes every five minutes, needs 30 minute breaks every 30 minutes, should elevate legs 80% of the day, needs an assistive device while standing/walking, can use hands, fingers, and arms 25% of the day, will be off-task more than 25% of the workday, cannot tolerate even low stress work, and would be absent more than four days per month. This opinions is generally unpersuasive. While some parts of the opinion are supported by the limited findings in the functional capacity examination, the opinion is generally inconsistent with the longitudinal medical evidence of record. For example, treatment records do not note the need for the claimant to elevate her legs, the use of an assistive device, or any manipulative limitations. Furthermore, the claimant testified to a greater ability to sit and stand than is included in the opinion. These discrepancies render the entire opinion less reliable and therefore less persuasive.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the longitudinal evidence of record. The claimant's lumbar and hip impairments have been accommodated with a limitation for sedentary work with reduced postural duties. However, due to the evidence of normal gait, no acute distress, intact strength, sensation, reflexes and extremity mobility, and modest diagnostic test results, the undersigned finds that no other limitations are warranted.

[TR 16-18].

### New Rule for Assessing Medical Opinion Evidence

All Parties agree the Social Security Administration's new rule for assessing medical opinion evidence governs all claims filed on or after March 27, 2017, and thus applies to Plaintiff's claims herein. *See* 20 C.F.R. § 404.1520c. The old rule required the ALJ to give a treating physician's opinion "controlling weight" in the absence of specific mitigating factors, and to "always give good reasons" in the determination for the weight given to a treating physician's opinion. § 404.1527(c)(2). The new rule eliminates the "controlling weight" given to treating physicians. § 404.1520c(a). A medical opinion is a statement about what functional limits a claimant may have from an impairment. § 404.1513(a)(2).

The new rule, 20 C.F.R. § 404.1520c, provides that the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the [claimant's] medical sources." § 404.1520c(a).[3] Rather, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the

---

[3] In transitioning to the new rule, the administration noted, "[t]he current policies that focus upon weight, including the treating source rule, have resulted in reviewing courts focusing more on whether we sufficiently articulated the weight we gave opinions rather than on whether substantial evidence supports the Commissioner's final decision." *Webster v. Comm'r*, No. 3:19-cv-97-DAS, 2020 WL 760395, at *3 (N.D. Miss. Feb. 14, 2020). "In other words, the new rules are an attempt to eliminate confusion about a hierarchy of medical sources. . . . Reviewing courts, therefore, will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)." *Id.*

treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of

the treatment relationship, and examining relationship; (4) specialization; and (5) other factors,

including but not limited to evidence showing a medical source has familiarity with the other

evidence in the claim or an understanding of the agency's disability program's policies and

evidentiary requirements.  § 404.1520c(a), (c)(1)-(5).  Important to the instant analysis, the new

rule also changed the articulation requirements for how the ALJ considers each medical opinion.

The new articulation requirements state:

> (1) Source-level articulation. Because many claims have voluminous case records
> containing many types of evidence from different sources, it is not administratively
> feasible for us to articulate in each determination or decision how we considered
> all of the factors for all of the medical opinions and prior administrative medical
> findings in your case record. Instead, when a medical source provides multiple
> medical opinion(s) or prior administrative medical finding(s), we will articulate
> how we considered the medical opinions or prior administrative medical findings
> from that medical source together in a single analysis using the factors listed in
> paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required
> to articulate how we considered each medical opinion or prior administrative
> medical finding from one medical source individually.

§ 404.1520c(b)(1)-(2); *see Moore v. Comm'r*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at

*2 (N.D. Miss. July 7, 2021) (finding that the medical source regulations do not "require the ALJ

to expressly address the persuasiveness of every opinion within every report").

### The ALJ Properly Assessed the Medical Evidence

Again, underpinning each of Plaintiff's alleged errors on appeal is Plaintiff's contention

that the ALJ erroneously rejected the October 2020 medical source statement completed "jointly"

by Dr. East and Winn; Plaintiff urges the ALJ failed to complete a proper supportability analysis,

and mistakenly found the assessment was inconsistent or at odds with the longitudinal medical

evidence of record [Dkt. 15 at 9]. Commissioner rejoins that ALJ properly considered the statement under the new regulatory framework for assessing medical evidence [Dkt. 16 at 10].[4]

As an initial matter, in support of her arguments, Plaintiff seemingly argues that the ALJ was not permitted to find the opinions of the SAMCs more persuasive than Dr. East, a treating physician [Dkt. 15 at 16-17]. This argument ignores Plaintiff's concession elsewhere that the new rule governs Plaintiff's claim. "ALJs are no longer required to give controlling weight to the opinions of treating physicians." *Pearson v. Comm'r*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (quotation omitted). Plaintiff also highlights the ALJ's statement that the October 2020 assessment is largely not a medical opinion, calling such finding "invalid" [Dkt. 15 at 14]. By way of reminder, the ALJ's Determination notes that the October 2020 assessment "appears to be mostly completed by Mitch Winn, OTR, who signed it on October 12, 2020 (8F). John East, DO, appears to have filled in page one of that exhibit and some check boxes on page 2" and thus "the majority of the exhibit is not a medical opinion" and "not particularly valuable" [TR 18]. Under the new regulations, a "medical opinion" is defined as follows: A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (For claims filed (see § 404.614) before March 27, 2017, see § 404.1527(a) for the definition of medical opinion.). 20 C.F.R. § 416.913(a)(2). It is clear under the prior rule, only acceptable medical sources, which did not include therapists, could render medical opinions. Under the new rule, which is less limiting, a "medical source"—not just an acceptable medical source—can submit a medical opinion. *Miller v. Comm's of Soc. Sec.*, No. 1:20-cv-194, 2021 WL 7541415, at *5 (S.D. Miss. Dec. 17, 2021), *report and recommendation*

---

[4] The Commissioner also argues and submits substantial time to briefing *Chevron* deference. The Court finds following review of all briefs such argument is inapplicable here and need not be addressed.

*adopted*, 1:20-cv-00184, 2022 WL 566175 (S.D. Miss. Feb. 24, 2022).  In any case, the ALJ found the October 2020 assessment constituted a medical opinion "jointly" completed by Dr. East and considered it as such [TR 189 ("While the majority of the exhibit is not a medical opinion … it appears that Dr. East adopted the occupational therapist's findings, and the opinion will be evaluated in accordance with 20 CFR 1520c.")].

Consequently, the ALJ had an obligation, using the new rule for assessing medical opinion evidence, to assess both the supportability and consistency of the October 2020 assessment.  *See* 20 C.F.R. §§ 404.1520(b)(2), 404.1520c(a).  Supportability means the degree to which objective medical evidence supports the medical opinion at issue, and consistency looks to the consistency between different medical opinions across the record.  § 404.1520c(c)(1)-(2).  Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r,* No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted,* No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).  "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase,'" and consistency is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."  *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)) (quoting *Vellone v. Saul*, No. 1:20-CV-00261-RAK-HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)).  There is limited case law concerning what constitutes a sufficient "explanation" of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2).  But, as described by one court, the standard is as follows:

> The measuring stick for an "adequate discussion" is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof.

*Luckett*, 2021 WL 5545233 at *4 (S.D. Tex. Nov. 26, 2021) (citing *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021)). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (quotation omitted).

Such a bridge exists in this case. Contrary to Plaintiff's assertion, the ALJ took pains to list and coherently explain conflicts between the October 2020 statement and Plaintiff's remaining relevant medical records (including APM's records, Dr. East's office). Indeed, Plaintiff's briefing focuses on her alleged limits on reaching and carrying, but the ALJ delineated that Plaintiff's treatment records, including those from APM, repeatedly, and contrary to the October 2020 assessment, indicated no manipulative limitations and few exertional limitations. Consider these excerpts from the ALJ's determination: "While the claimant alleged trouble lifting over two pounds and holding onto items, her physical examinations frequently found normal movement of all extremities, mobility unlimited, and normal muscle bulk, tone and strength (1F/35/36/53/66, 4F/15, 7F/11)" [TR 17]. "For example, treatment records do not note the need for the claimant to elevate her legs, the use of an assistive device, or any manipulative limitations. Furthermore, the claimant testified to a greater ability to sit and stand than is included in the opinion." [TR 18]. The ALJ's explanation satisfies the required discussion of the supportability and consistency of the October 2020 assessment.[5]   *See Glass v. Comm'r of Soc. Sec.*, No. 2:20-cv-207, 2022 WL

---

[5] Plaintiff urges against this result, positing that an adequate discussion of these factors requires the ALJ to elaborate on the acceptance or rejection of each of the limitations stated in the October 2020 assessment [Dkt. 15 at 15-16]. However, an ALJ need not address every finding set forth by a medical source. 20 C.F.R. § 404.1520c(b) (OASDI),

1194690, at *2-3 (S.D. Miss. Jan. 12, 2022), *report and recommendation adopted*, No. 2:20-cv-207, 2022 WL 990223 (S.D. Miss. Mar. 31, 2022).

ALJ's are never required to incorporate limitations in the RFC that they did not find to be supported in the record. *See Ewing v. Colvin,* No. 4:13-cv-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014); *Renovato v. Saul*, No. H-20-643, 2021 WL 966098, at *6 (S.D. Tex. Mar. 15, 2021) (affirming an ALJ's decision that rejected a consultative examiner's opinion who determined plaintiff could never finger, feel, push, or pull, despite a fairly normal physical examination, and which was controverted by other record evidence). Indeed, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," and the Court "may not reweigh the evidence or substitute [its] judgment for that of the Commissioner." *Pulley v. Comm'r*, 2022 WL 1694436 (N.D. Tex. May 13, 2022). Here, Dr. East's opinion contained extreme limitations the ALJ found unpersuasive. Because the ALJ clearly explained why, the Court may not second guess him. *Johnson v. Kijakazi*, No. 4:21-cv-2192, 2022 WL 2193412, at *3 (S.D. Tex. June 17, 2022) ("The Commissioner has resolved the conflict. It is not my role to reweigh or second-guess that administrative decision."). Ultimately, the ALJ found Plaintiff can perform limited sedentary work, with no manipulative limitations, and some exertional limitations. In reaching this conclusion, the ALJ found the opinions of the SAMCS to be persuasive. Both SAMCs doctors opined that Plaintiff was capable of sedentary work with some limitations. Notably, the RFC's limitations on lifting and carrying and manipulative limitations match those found by the SAMCs, limiting Plaintiff to lifting and carrying occasionally 10 pounds and frequently less than ten pounds, and finding no manipulative limitations. It is clear, that in formulating the RFC and determining Plaintiff was capable of limited sedentary work, the

---

§ 416.920c(b) (SSI); *Richardson v. Kijakaz*i, No. 8:20-cv-1107, 2021 WL 3879049 (M.D. Fla. Aug. 31, 2021) (citing *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014)).

ALJ relied on the medical evidence, including the findings of the SAMCs. *See Teresa B. v. Kijakazi*, No. 4:20-cv-2562, 2022 WL 902640, at *6 (S.D. Tex. Mar. 28, 2022) ("[T]he Court finds that the SAMCs' opinions provide substantial evidence to support the ALJ's RFC determination."); *see also Gaunder v. Comm'r of Soc. Sec.*, No. 4:19-cv-1002, 2020 WL 7091263, at *3 (N.D. Tex. Sept. 28, 2020) (finding the ALJ properly weighed the evidence under the new regulations in finding the SAMCs opinion more persuasive than the treating physical or consultative examiner), *report and recommendation adopted*, No. 4:19-cv-1002, 2020 WL 6128040 (N.D. Tex. Oct. 19, 2020).

The inquiry for the Court is whether the record as a whole "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).[6] The ALJ's decision shows careful consideration of the medical records and testimony. The record contains evidence which supports the RFC found by the ALJ. *See Gina R. v. Comm'r*, No. 3:19-CV-2038-BK, 2021 WL 1209198, at *3-4 (N.D. Tex. Mar. 30, 2021) (finding substantial evidence for the ALJ's RFC assessment where the full medical record did not support the limitations put forth by the consultative examiner); *Martinez v. Saul*, No. SA-20-CV-00869-ESC, 2021 WL 2253912, at *5-6 (W.D. Tex. June 3, 2021) (finding substantial evidence for the RFC where the ALJ considered all objective medical evidence in the record).

### *Whether the ALJ's Hypothetical Included All Limitations Supported by the Evidence*

In this appeal, Plaintiff further argues that the hypothetical question the ALJ posed to the VE was flawed because it did not include the limitations posited by Dr. East that she is not able to reach or carry any weight. A defective hypothetical is reversible error. *See Orosco v. Comm'r*,

---

[6] Plaintiff is correct that in determining the RFC the ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his or [her] position," *Loza*, 219 F.3d at 393; however, the ALJ (not the Court) interprets and weighs any conflicts in the medical evidence. *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016).

171 F. Supp. 3d 539, 544 (E.D. Tex. 2016). However, a hypothetical question posed to a VE is not defective if (1) the hypothetical question reasonably incorporates all disabilities of the claimant recognized by the ALJ, and (2) "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling,* 36 F.3d at 436.

Here, the ALJ presented the following hypothetical to the VE (which as Plaintiff notes became the RFC assigned to Plaintiff) [Dkt. 15 at 10]:

> Hypothetical person number one is someone who could do the following. This individual can lift, carry, push, or pull up to ten pounds occasionally and less than ten frequently. Stand or walk for two hours out of an eight-hour day and sit for six hours out of an eight-hour day. Can occasionally climb ramps or stairs but cannot climb ladders, ropes, or scaffolds. And can occasionally balance, stoop, kneel, crouch, and crawl. For person number one, would past work of the claimant be available?

[TR 39]. The VE answered "No, Your Honor" [TR 39]. The ALJ further inquired: "Would there be any semi-skilled or skilled work that someone with this profile could perform that would require skills obtained in the past work but no additional skills? …. I understand that this is essentially sedentary. …. That's why I'm asking about transferability of skills" [TR 39-40]. The VE responded that "[t]here is a transferability of skills to hospital admitting clerk. That is the only job that comes up under transferable skills at the sedentary level" [TR 40]. The ALJ then asked "in terms of the skills that would, that would be required for that jobs the ones that were obtained in the past work?" [TR 40]. The VE responded "[t]he primary skills is the ability to deal with a variety of tasks and change…accuracy, so attention to detail of letters, numbers, and so forth is important…deal with the public" [TR 41]. The VE testified that there is approximately 188,000

hospital admitting clerk jobs in the national economy [TR 42-43]. The ALJ also asked "if an individual needed to have a sit/stand option … say every thirty minutes, alternating between sitting and standing, what impact would that have on the availability [of jobs as a hospital admitting clerk]?" [TR 43]. The VE responded that "to stand every 30 minutes every day, if it only just a few minutes for a brief stretch would not be tolerated" [TR 43]. The ALJ then clarified that "anything more than a quick stretch" would not be tolerated [TR 44]. The VE responded affirmatively [TR 44].

The ALJ's hypothetical presented to the VE encompassed all the limitations that were ultimately recognized by the ALJ. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (affirming ALJ's decision to omit questions concerning limitations the ALJ did not recognize). Because substantial evidence supports the RFC, the hypothetical presented to the VE was not defective. *See Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (affirming ALJ's step five finding when she relied on hypothetical questions that contained only those limitations included in the RFC); *Castillo v. Saul*, H-20-1911, 2021 WL 3232453 at *6 (S.D. Tex. July 14, 2021) ("[S]ubstantial evidence supports the limitations that the ALJ recognized and incorporated into the RFC. … The hypothetical posed to the VE was not defective."), *report and recommendation adopted*, H-20-1911, 2021 WL 3207973 (S.D. Tex. July 29, 2021). Moreover, Plaintiff's attorney was afforded an opportunity to correct any defect in the hypothetical but did not ask the VE any questions at Hearing [TR 44]. *See Bowling*, 36 F.3d at 436 (finding no reversible error if a plaintiff or her representative has an opportunity to correct deficiencies in the hypothetical question); *Stephens v. Astrue*, No. H-10-3251, 2011 WL 6826828, at *10-11 (S.D. Tex. Dec. 28, 2011) (same).

## CONCLUSION AND RECOMMENDATION

Pursuant to the foregoing, it is recommended the decision of the Commissioner be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 8th day of July, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE